# IN THE SUPREME COURT OF IOWA

No. 20–0268

Submitted April 14, 2021—Filed May 21, 2021

Amended July 20, 2021

**LIQUOR BIKE, LLC,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR POLK COUNTY,**

Defendant.

Certiorari to the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

A limited liability company filed a petition for a writ of certiorari challenging a district court order to disqualify counsel. **WRIT SUSTAINED AND CASE REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Billy J. Mallory (argued) of Brick Gentry, P.C., West Des Moines, for plaintiff.

William M. Reasoner (argued) and David L. Wetsch of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for defendant.

**McDONALD, Justice.**

"A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Phila. Indem. Ins.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F. Supp. 607, 613 (S.D. Ohio 1988)). Here, notwithstanding the general rule that a legal entity is separate and distinct from its owners, the district court disqualified Liquor Bike, LLC's counsel on the ground counsel's representation of Liquor Bike in this matter was directly adverse to a current client of counsel's law firm in another matter. We granted Liquor Bike's petition for writ of certiorari, and we sustain the writ.

I.

In April 2019, Heartland Plastic & Reconstructive Surgery, P.C., engaged Douglas Fulton of Brick Gentry, P.C., to represent Heartland with respect to an application for a certificate of need to establish an ambulatory surgery center. Heartland is a professional corporation owned solely by Dr. Eugene Cherny. Dr. Cherny is the only officer of Heartland.

In July 2019, attorney David Wetsch of Dickinson, Mackaman, Tyler & Hagen, P.C., sent a demand letter on behalf of Vivone, LLC, to Liquor Bike. The demand letter stated the two entities own adjacent properties and a recent survey found there was a small encroachment of the property line. The letter demanded Liquor Bike remove the encroachment or contact attorney Wetsch to negotiate an encroachment easement. The properties at issue were unrelated to Heartland or Dr. Cherny's medical practice.

Liquor Bike's attorney was Billy Mallory of the Brick Gentry firm. Mallory and Wetsch tried to resolve the boundary-line dispute but were unable to do so. In September 2019, Vivone, represented by attorneys Wetsch and William Reasoner of the Dickinson firm, filed a petition for injunction in the district court. In the petition, Vivone requested Liquor Bike be ordered to remove the encroachment. Reasoner requested Mallory accept service for Liquor Bike, and Mallory agreed to do so. On October 22, Mallory filed an answer, affirmative defenses, and counterclaims on behalf of Liquor Bike.

Three weeks after Liquor Bike asserted counterclaims against Vivone, Vivone moved to disqualify Mallory and the Brick Gentry firm from representing Liquor Bike in the boundary-dispute litigation. The basis for the motion was a purported concurrent conflict of interest. According to the motion, Brick Gentry represented Heartland and Dr. Cherny and Brick Gentry's defense of Liquor Bike in the boundary dispute was adverse to Dr. Cherny. According to the motion, the representation of Liquor Bike was adverse to Dr. Cherny because (1) Dr. Cherny was a member of Vivone; (2) the manager of Vivone was another company, JSV Community Properties, Inc.; and (3) Dr. Cherny owned 100% of the voting stock of JSV. JSV is a holding company for real estate investments.

The motion to disqualify counsel came on for an evidentiary hearing. The engagement letter between Brick Gentry and Heartland was admitted into evidence. The engagement letter stated, "This letter confirms our agreement to represent Heartland Plastic & Reconstructive Surgery, PC, with regard to an application for an Iowa Certificate of Need for an Ambulatory Surgery Center." The engagement letter was signed on behalf of Heartland by Dr. Cherny. There is no indication in the engagement letter that Brick Gentry represented Dr. Cherny in his individual capacity

in the certificate-of-need matter. The evidence also showed Dr. Cherny was not a member of Vivone. Brenda Rowe owned 49% of the membership interest in Vivone, and JSV owned the remaining 51%. Dr. Cherny was the president, secretary, and treasurer of JSV. He owned 100% of the voting stock of JSV and 55% of the outstanding stock of JSV. Joseph, Stephen, and Vincent Cherny owned the remaining 45% of the stock of JSV, 15% each.

The district court disqualified Mallory and Brick Gentry from representing Liquor Bike in the boundary-dispute litigation. The district court found, "The bottom line is this: Brick is on both sides of the fence here as it relates to Dr. Cherny." Because of this, the district court reasoned, Mallory's representation of Liquor Bike adverse to Vivone violated Iowa Rule of Professional Conduct 32:1.7. In particular, the district court relied on comment 6 to the rule:

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.

Iowa R. Prof'l Conduct 32:1.7 cmt. [6] (2019).

## II.

A motion to disqualify an attorney is reviewed for abuse of discretion. *See Killian v. Iowa Dist. Ct.*, 452 N.W.2d 426, 428 (Iowa 1990). "A district court 'abuses its discretion when its ruling is based on clearly untenable grounds.'" *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa 2016) (quoting *Bottoms v. Stapleton*, 706 N.W.2d 411, 415 (Iowa 2005)). The party moving for disqualification bears the burden of proving the grounds for disqualification. *See Bottoms*, 706 N.W.2d at 418.

III.

"[O]ur starting point in evaluating a claim that an attorney should be disqualified from representing a party is the ethical principles outlined in the Iowa Rules of Professional Conduct." *Id.* at 415. In evaluating whether an attorney should be disqualified, courts should balance the right to choose a specific attorney against the need for ethics that preserve public trust and integrity in the legal system. *See id.* "Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particularly strict scrutiny.' " *Macheca Transp. Co.*, 463 F.3d at 833 (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)).

The Iowa Rules of Professional Conduct outline when a concurrent conflict of interest would prevent representation:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> . . . .
>
> (4) each affected client gives informed consent, confirmed in writing.

Iowa R. Prof'l Conduct 32:1.7. Individual attorney conflicts are imputed to the entire firm with which they are associated. *See id.* r. 32:1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly

represent a client when any one of them practicing alone would be prohibited from doing so by rule 32:1.7 or 32:1.9 . . . .").

We hold the district court abused its discretion in concluding Mallory's representation of Liquor Bike in the boundary-dispute litigation was directly adverse to Dr. Cherny in violation of rule 32:1.7(a)(1). We analyzed the issue of directly adverse representation of concurrent clients in *NuStar Farms, LLC v. Zylstra.* *See* 880 N.W.2d at 484–85. There, we held a concurrent conflict justified disqualification. *See id.* The Zylstras consulted with an attorney for estate planning and reviewing manure easements in an agreement with NuStar Farms, LLC. *See id.* at 480. The attorney marked the manure easements document but advised the couple to seek the advice of a different attorney. *See id.* Several years passed during which the attorney represented the Zylstras in various other matters when the attorney also began representing NuStar in a loan-covenants matter. *See id.* at 481. The attorney started contacting the Zylstras on behalf of NuStar about the failure to provide a deed. *See id.* After several emails to the Zylstras regarding NuStar's deed, the attorney stated he intended to take legal action against the Zylstras on behalf of NuStar and informed the Zylstras that he would cease representing them in any matter. *See id.* We held that the attorney's "representation of NuStar was a directly adverse concurrent conflict of interest" because the attorney clearly intended to "pursue a future, adverse action against the Zylstras on behalf of NuStar." *Id.* at 484.

Unlike *NuStar*, here there is no direct adversity between existing clients. First, the Brick Gentry firm did not represent Dr. Cherny in the certificate-of-need matter, and the district court abused its discretion in finding otherwise. The Brick Gentry firm represented Heartland in the certificate-of-need matter. Heartland is a professional corporation

separate and distinct from Dr. Cherny. *See* Iowa Code § 490.622(2) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation."); *id.* § 496C.3 (stating the business corporation act applies to professional corporations); *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 809 (Iowa 1978) ("Central to corporate law is the concept a corporation is an entity separate from its owners. The separate corporate personality ordinarily enables corporate stockholders to limit their personal liability to the extent of their investment."). "A lawyer employed or retained by an organization *represents the organization* acting through its duly authorized constituents." Iowa R. Prof'l Conduct 32:1.13(a) (emphasis added). Contrary to the district court's conclusion, a lawyer's representation of an organization does not necessarily mean the lawyer also represents the owners, employees, or other constituents of the organization. *See id.* r. 32:1.7 cmt. [34] ("A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary."); *Terre Du Lac Prop. Owners' Ass'n v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983) ("A corporation is a legal entity, separate and apart from the person or persons who are stockholders and directors of the corporation and counsel who represents a corporation is not ordinarily precluded from acting as counsel in suing a director. . . . Representing a closely held corporation does not inherently mean that counsel is acting as counsel to the individual director-shareholders.").

There are circumstances, however, in which the evidence could establish an attorney–client relationship between the lawyer and the organization's owners, employees, or constituents. *See generally Glueck*

*v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981) (discussing vicarious or attenuated clients); *Colorpix Sys. of Am. v. Broan Mfg. Co.*, 131 F. Supp. 2d 331 (D. Conn. 2001) (same); *First Republic Bank v. Brand*, 51 Pa. D. & C.4th 167, 177–79 (2001) (reviewing cases that have addressed the issue of whether an attorney for a closely-held corporation also represents the closely-held corporation's stockholders). But that evidence is lacking here. The engagement letter in the certificate-of-need matter clearly expressed Brick Gentry represented Heartland. While Dr. Cherny testified he viewed Brick Gentry as his lawyers in the certificate-of-need proceeding, there is no evidence Brick Gentry represented Dr. Cherny in his personal capacity in the certificate-of-need matter. Vivone, as the party seeking disqualification, had the burden of production and persuasion to establish the existence of an attorney–client relationship, and it failed to carry those burdens. *See, e.g.*, *Terre Du Lac Prop. Owners' Ass'n*, 661 S.W.2d at 48 ("Don Shrum chose to adopt the advantages of the corporate form of doing business with respect to the enterprise that was involved in the litigation in which the corporation was represented by the Roberts firm. There is no evidence that the law firm ever represented Don Shrum individually."); *Jesse v. Danforth*, 485 N.W.2d 63, 69 (Wis. 1992) (holding representation was not directly adverse where lawyer represented professional corporation and not physician shareholders).

Second, Dr. Cherny was not an adverse party in the boundary-dispute litigation. Brick Gentry represented Liquor Bike in the boundary-dispute litigation. The adverse party in that litigation was Vivone and not Dr. Cherny. As a limited liability company, Vivone is "an entity distinct from its members." Iowa Code § 489.104(1). Further, Dr. Cherny was not even a member of Vivone. The evidence showed Vivone was owned 51% by JSV and 49% by Brenda Rowe. Dr. Cherny owned 55% of JSV, and

three other Chernys owned the remainder. JSV is a legal entity distinct from its shareholders. *See id.* § 490.622(2); *Briggs Transp. Co.*, 262 N.W.2d at 809. Brick Gentry has never represented Vivone, Rowe, JSV, Dr. Cherny, or the other owners of JSV. The district court abused its discretion in disregarding the separate legal status of Vivone and JSV to find Liquor Bike was actually adverse to Dr. Cherny in the boundary-dispute litigation.

We also conclude disqualification is not warranted under rule 32:1.7(a)(2). That rule provides that even where a lawyer's representation of one client is not directly adverse to another client, there may nonetheless be a concurrent conflict of interest if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Iowa R. Prof'l Conduct 32:1.7(a)(2).

> The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

*Id.* r. 32:1.7 cmt. [8]. Here, Vivone failed to prove there is a "significant risk" that Brick Gentry's representation of Liquor Bike or Heartland will be materially limited in any respect. *Id.* r. 32:1.7; *Bottoms*, 706 N.W.2d at 417 ("[I]f there is a significant risk that representation of one client will materially limit the representation of another client, a conflict of interest actually exists . . . .").

There is no risk the Brick Gentry firm could take advantage of confidential information. The certificate-of-need matter is a regulatory proceeding in which all information filed in support of the application is

accessible to the public. All of the financial information Heartland provided to Brick Gentry in support of the application became public information. Further, there is no evidence Dr. Cherny provided Brick Gentry with information related to Vivone that might potentially raise an issue. *See, e.g.*, *Castillo v. St. Paul Fire & Marine Ins.*, 938 F.2d 776, 778 (7th Cir. 1991) (affirming denial of motion to disqualify where information provided by physician during course of representation "gave the defendants no advantage or insight into his professional corporate affairs of any consequence"); *Terre Du Lac Prop. Owners' Ass'n*, 661 S.W.2d at 48 ("There is no contention that plaintiff's counsel may have learned anything of a confidential nature in its representation of the corporation in the pollution case that would be helpful to his present client.").

Vivone failed to prove that Brick Gentry's representation of Liquor Bike in the boundary dispute litigation would be materially limited. The boundary-dispute litigation between Liquor Bike and Vivone is not related to Heartland or Dr. Cherny's medical practice. Based upon Dr. Cherny's testimony at the disqualification hearing, he will not be a witness in the boundary-dispute litigation because he lacks personal knowledge of the encroachments at issue, which arose prior to Vivone acquiring the property:

> Q. And you had stated as part of this case you had directed David Wetsch to engage in negotiations with the neighboring property related to an alleged encroachment by a couple feet related to a fence; correct? A. Yes.
>
> Q. And you don't have any personal knowledge as to the events as a creation of this fence and the trash enclos[ure] and the concrete wall or anything like that, do you? A. That was before I owned the property.
>
> . . . .
>
> Q. You have no personal knowledge, do you, related to anything that occurs on the Vivone property on the south side,

do you? A. Oh, no. I know all the time who's renting it, where the vacancy is, what repairs are needed, are being done because I am the manager.

Q. Post 2014; correct? A. Yes.

Q. Nothing prior to 2014; correct? A. No.

Vivone has not articulated any theory supported by competent evidence showing a significant risk the Brick Gentry firm's representation of Liquor Bike will materially interfere with its representation of any its clients. *See, e.g., McCarthy v. John T. Henderson, Inc.*, 587 A.2d 280, 285 (N.J. Super. Ct. App. Div. 1991) ("[T]here is simply no basis in the record to conclude that any information was conveyed to [the law firm] of the nature that could be used to defendants' disadvantage in the present case which involves wholly unrelated issues.").

IV.

"Attorney disqualification is a drastic measure because it destroys the attorney–client relationship by prohibiting a party from representation by counsel of his or her choosing." *Schwartz v. Cortelloni*, 685 N.E.2d 871, 877 (Ill. 1997). Motions to disqualify opposing counsel are thus disfavored and "should be subjected to particularly strict scrutiny." *Macheca Transp. Co.*, 463 F.3d at 833 (quoting *Harker*, 82 F.3d at 808). Here, the district court did not subject this motion to strict scrutiny and instead found a concurrent conflict of interest where none exists. We sustain the petition for writ of certiorari, vacate the district court's order disqualifying counsel, and remand this matter for further proceedings.

**WRIT SUSTAINED AND CASE REMANDED.**